No. 19,476.

COLORADO MANAGEMENT CORPORATION, ET AL. *v.* THE AMERICAN FOUNDERS LIFE INSURANCE COMPANY.

(367 P. [2d] 335)

Decided December 4, 1961.

Mr. CLARENCE W. BUTTON, Miss ALICE LOVELAND, for plaintiffs in error.

Messrs. YEGGE, HALL and SHULENBURG, for defendant in error.

*En Banc,*

MR. CHIEF JUSTICE HALL delivered the opinion of the Court.

THE parties appear here in the same order as in the trial court. We refer to them as plaintiffs and defendant.

Plaintiffs in their complaint set forth seven claims for relief. They allege: (1) that on February 27, 1956, the defendant issued or granted seven options to seven different optionees to purchase, on or before March 15, 1958, varying amounts of the defendant's stock, the total shares optioned being 234,000 shares, the option price being $2.00 per share; (2) that on March 11, 1958, the period for exercising the options had been extended until March 15, 1960; (3) that plaintiffs are the present owners of all of said options; (4) that while said options were in full force and effect the defendant refused and still refuses to permit plaintiffs to exercise said options, or any of them; (5) that by reason of such refusal plaintiffs have been damaged in varying amounts, totaling $149,177.50.

Defendant in its answer alleges that the purported options and extensions are void because of lack of authority in the officers to issue the options or extensions; void for lack of consideration; that plaintiffs do not own said options, and denies that it refused to recognize said options while in full force or effect.

Trial was had to the court.

Evidence offered by plaintiffs, when considered in the

light most favorable to them, established the following: that said options were granted and extended until March 15, 1960; that on June 3, 1958, plaintiffs were the owners and assignees of said options and on that date plaintiffs, Hudson and Roan, together with two other persons who acccompanied them to be witnesses as to what transpired, appeared at defendant's offices and stated that the plaintiffs owned the seven options and desired to exercise the same, at which time Hudson stated he was prepared:

" * * * to give him [Mobley, defendant's then president] a check for one hundred dollars, one thousand dollars, or any amount that was due and necessary to pick up the total options that we had there, and I asked him to give me a total figure."

Mobley then advised Hudson he could not issue the stock and stated he would like to call the company attorney and, agreeably to all, that was done. On the attorney's arrival there was some discussion concerning the validity of the alleged options, the alleged extensions and other matters in connection therewith. The defendant's attorney then advised Hudson and Roan that they should submit their request in writing to defendant's Board of Directors and accompany this request with a certified check or bank draft. He then notified Hudson that the company was not at that time going to issue the stocks. Thereupon Hudson, Roan and their two witnesses departed. (Seven days thereafter this action was commenced.)

Further testimony offered by plaintiffs indicated that they had paid the total sum of $149,177.50 for the seven options, together with some stock of the plaintiff, the Colorado Management Corporation, and some stock of Allied Colorado Enterprises.

Plaintiffs' evidence further tended to show that the market price of defendant's stock between June 1, 1958, and July 15, 1958, varied from 85¢ to $1.15 per share. The record is devoid of any testimony that defendant's

stock ever sold for more than $2.00 per share. The record is devoid of evidence as to the book value of the stock or any value other than the market price referred to.

Upon the conclusion of plaintiffs' evidence the defendant moved for a dismissal of the complaint. This motion was granted on the finding that plaintiffs had failed to prove any damages. A motion for new trial was filed and denied and judgment of dismissal entered.

Plaintiffs are here by writ of error seeking reversal.

As reasons for reversal plaintiffs urge that the court erred in sustaining the motion to dismiss for lack of proof of damage. Elaborating on this contention they assert that: (a) the plaintiffs had a right to elect what remedy they should seek and the court had no right to find that they had made a mistake in the remedy sought; (b) the court was in error in finding that there was an available market for defendant's shares at the time plaintiffs sought to exercise the options; (c) the trial court erred in finding that the plaintiffs had failed to prove any damage.

Plaintiffs' complaint, in alleging damages, sheds little if any light on the manner of arriving at the alleged damages.

In each claim based on each option it is alleged:

"5. That by reason of defendant's wrongful refusal as alleged hereinbefore, plaintiffs have been damaged in the sum of [amount stated]."

Following is an analysis of the seven claims which shows a wide difference per share loss in failing to issue the stock provided for in the options:

| Claim No. | Number of shares optioned. | Total loss arising out of failure to issue shares. | Loss per share because of failure to issue. |
|---|---|---|---|
| 1 | 60,000 | $91,000.00 | $1.51 plus |
| 2 | 28,000 | 20,000.00 | .71 plus |
| 3 | 28,000 | 22,000.00 | .78 plus |
| 4 | 55,000 | 8,500.00 | .15 plus |
| 5 | 5,000 | 3,300.00 | .66 |
| 6 | 28,000 | 627.50 | .02 plus |
| 7 | 28,000 | 627.50 | .02 plus |

■ Clearly these alleged losses bear no relation to any of the facts before the court. The cost to plaintiffs of the various assignments of the options is of no concern of the defendant and evidence thereof is wholly immaterial to the issues herein. *Forsyth v. Ryan,* 17 C. A. 511, 68 Pac. 1055; *Reduction Co. v. Johnson,* 10 C. A. 135, 50 Pac. 215.

Plaintiffs do not make it clear just why they should be reimbursed by the defendant for amounts that they had paid to others for options which at the time of granting or at the time of asssignment thereof might well have been of great value, but which at the time they sought to exercise them were worthless.

Certainly defendant's obligation, if any, was to comply with its agreement — deliver the stock on payment of the option price. Failing to do so it became answerable in damages, if damages resulted.

The trial judge held and all parties agree with the holding that the parties' rights and duties are governed by the Uniform Sales Act and that the measure of plaintiffs' damages is to be found in CRS '53, 121-1-67:

" (1)    Where the property in the goods has not passed to the buyer, and the seller wrongfully neglects or refuses to deliver the goods, the buyer may maintain an action against the seller for damages for non-delivery.

" (2)    The measure of damages is the loss directly and naturally resulting in the ordinary course of events, from the seller's breach of contract.

" (3)    Where there is an available market for the goods in question, the measure of damages, *in the absence of special circumstances showing proximate damages of a greater amount,* is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered or if no time was fixed, then at the time of the refusal to deliver." (Emphasis supplied.)

Counsel are in disagreement as to whether subsection

(2) or subsection (3) is applicable to the facts as here presented.

■ The trial judge held that subsection (3) governs; that the evidence disclosed an available market for defendant's stock before, at the time of, and after the date plaintiffs endeavored to exercise the options; that defendant's refusal to issue stock for $2.00 per share, when such stock was available on the market at a price ranging from 85¢ to $1.15 per share, as shown by plaintiffs' evidence, did not result in damages to plaintiffs. If the trial court's finding that there was an available market and that stock was available at a price ranging from 85¢ to $1.15 is correct, it follows as night follows day that there was no proof of damages.

Counsel for plaintiffs urge that even though this section is applied, there are here:

"* * * special circumstances showing proximate damages of a greater amount * * * ."

They urge as such *special circumstance* the fact that they paid $149,177.50 for the options. We have pointed out above that the cost to them is not proximate damages arising out of failure to issue the stock and has nothing whatsoever to do with their present claims for damages.

Counsel for plaintiffs further contend that their damages should be measured by subsection (2):

"(2) The measure of damages is the loss directly and naturally resulting in the ordinary course of events, from the seller's breach of contract."

■ This subsection, if applied to the facts in this case, avails plaintiffs nothing, for they offered no proof whatsoever as to any loss suffered by them attributable to the defendant's refusal to issue 234,000 shares of stock at $2.00 per share. Plaintiffs' only evidence goes to the amounts they claim to have paid for the options—amounts varying from 2¢ per share to $1.51 per share. Such evidence does not prove or tend to prove that on June 3, 1958, or subsequent thereto, the stock represented by these options had any value whatever.

The judgment of the trial court is clearly correct and is affirmed.

MR. JUSTICE SUTTON not participating.